UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL BRITKO,

               Plaintiff,                          Case No. 15-cv-12219

v.                                          Honorable Thomas L. Ludington

BAY REGIONAL MEDICAL CENTER d/b/a
MCLAREN BAY REGION,

               Defendant.

_____/

**OPINION AND ORDER CANCELLING ORAL ARGUMENT,
GRANTING IN PART MOTION FOR SUMMARY JUDGMENT,
DISMISSING COUNT I OF COMPLAINT WITH PREJUDICE, AND
DISMISSING COUNT II OF COMPLAINT WITHOUT PREJUDICE**

On June 18, 2015, Plaintiff Michael Britko filed a complaint against Defendant Bay Regional Medical Center. Pl.'s Compl., ECF No. 1. He brings claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*., and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq*. He asserts that Defendant terminated his employment in retaliation for having taken leave to have a heart ablation procedure to treat a chronic atrial flutter in his heart. He also asserts that Defendant terminated his employment because of his atrial fibrillation—a disability.

Defendant moved for summary judgment on April 1, 2016. It argues that Britko cannot establish a prima facie case of FMLA retaliation. In the alternative, it argues that Britko cannot prove that its legitimate non-discriminatory reason for termination was pretextual. Defendant further argues that Britko cannot establish that he could perform the essential duties of his job. In the alternative, it argues again that he cannot demonstrate pretext.

**I.**

Michael Britko is a resident of Bay County, Michigan. He worked for entities affiliated with Defendant for over seventeen years before Defendant terminated his employment. "Defendant is a domestic nonprofit corporation authorized to conduct business in the State of Michigan and doing so in the County of Bay, State of Michigan." Pl.'s Compl. ¶ 2, ECF No. 1.

**A.**

On June 16, 2014, Britko transferred to McLaren Bay Region, the operating name of the hospital run by Defendant. Upon his transfer he was placed on a 90-day probationary period that included periodic performance reviews.

His new position was as precertification registrar. His job was to precertify the insurance coverage of individuals that had scheduled procedures with the hospital. Precertification registrars were assigned particular outpatient clinics with which to work. There are roughly seventeen to eighteen clinics and, for the majority of Britko's employment, there were five precertification registrars. The other precertification registrars handled as few as three clinics and as many as five. Britko, during this period, handled one clinic and part of another.

The supervisor of the precertification registrars was Debra Paladi, the Manager of Patient Access. The precertification department used national standards to determine how far "out" a registrar must be in precertifying procedures. The national standard used by Defendant was seven to ten days out. That means a precertification registrar should, on any given day, be working on precertifying insurance coverages for procedures taking place seven to ten days later.

The clinic assigned to Britko was the ultrasound clinic. He was also assigned the "add-on" line, also known as the "call-in" line. That assignment consisted of unscheduled procedures

that were arranged the same day the procedure was to be performed. Thus, the seven-to-ten-day advance certification standard did not apply to the add-on line.

**B.**

Defendant conducted its first evaluation of Britko's performance on July 22, 2014. Ms. Paladi performed the evaluation. Ms. Paladi concluded that Britko's performance in the areas of "Meets established standard for amount of work performed" and "Shows initiative and willingness to assist others" was unsatisfactory. She explained that Britko needed more training on the two software programs used by Defendant to conduct procedure precertifications. She also twice noted that Britko needed "to move forward." Jul. 22, 2014 Eval., Ex. C, Def.'s Mot. Summ. J., ECF No. 11-4. Ms. Paladi recommended retaining Britko.

**C.**

On July 2, 2014, Britko informed Ms. Paladi that he would need to undergo a medical procedure on his heart. Britko has suffered from atrial fibrillation since about 2005 or 2006. He has had prior ablation procedures to help treat his atrial fibrillation. His doctor determined in June of 2014 that another ablation procedure would be necessary. Britko told Ms. Paladi of his prior procedures and anticipated that he would be off work for two days.

When attempting to schedule the procedure with his doctor, Britko was given a date of August 1, 2014 for the procedure. Ms. Paladi asked that Britko see if the procedure could be moved to the following week to accommodate scheduled absences during the first week of August. Britko, still on the phone with his doctor's office, requested another date. The doctor's office gave him a date of August 11, 2014 for the procedure.

Britko had the procedure as scheduled on August 11, 2014. Due to complications, however, he needed two additional days off rather than the one that he anticipated. Britko's

doctor also recommended that he remain off from work until the following Monday, but Britko

decided that he needed to return that Thursday, August 14, 2014. Britko called Ms. Paladi and

left her two voicemails informing her that he needed the additional day off due to complications

and that he would be returning to work on Thursday, even though his physician suggested

staying off until the following Monday. Britko did not hear from Ms. Paladi.

Britko returned to work on Thursday, August 14, 2014 with a note from his doctor

authorizing him to return. See Aug. 13, 2014 Doc. Note, Ex. D, Def.'s Mot. Summ. J., ECF No.

11-5.

**D.**

Ms. Paladi conducted Defendant's second review of Britko's performance on September

12, 2014. This was a ninety-day review and supposed to be the final review of Britko's

probationary period.

As with Britko's prior evaluation, Ms. Paladi found that Britko's performance in the

areas of "Meets established standard for amount of work performed" and "Shows initiative and

willingness to assist others" was unsatisfactory. Additionally, she found Britko's performance in

the areas of "Performs work in accordance with established standards of quality" and "Has

demonstrated ability to plan and organize work" was also unsatisfactory. Ms. Paladi made the

following observation about the areas in which Britko needed to make improvements:

> Multi-tasking is a weak point. Ultra sounds [sic] after 90 days of employment
> should be consistently 4-5 days days [sic] ahead if not more. The add-on line is
> not only a learning tool but a permanent part of the duties of the position handling
> the U.S. Mike is having difficulty handling both functions. Not asking enough
> questions. While notes are better they are still sometimes confusing.

*Id*. Ms. Paladi also explained that Britko was still having difficulties with "speed and

multitasking." *Id*.

- 4 -

Although the ninety-day probationary period was set to end with either a recommendation that Britko be retained as a full staff member or terminated, Ms. Paladi made neither recommendation. Instead, she wrote: "At this time I am recommending that the Probationary period be extented [sic] an additional 30 days. OCT [sic] 10th will be the final review for the probationary period." *Id*.

Ms. Paladi followed up with a letter to Britko reiterating the extension of the probationary period and explaining that his "probationary period is now scheduled to be completed on October 12, 2014." Sept. 15, 2014 Letter, Ex. G, Def.'s Mot. Summ. J., ECF No. 11-8.

On October 9, 2014, just as the thirty-day extended probationary period was set to expire, Ms. Paladi informed Britko that he was terminated. During the exit interview, Britko informed Ms. Paladi that he was five days out on precertifications for the ultrasound clinic and working on his sixth day. But at the time he was still sharing the add-on line with two other precertification registrars, even though it was supposed to be wholly his responsibility.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out

specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must draw all reasonable inferences in favor of the non-movant when reviewing the evidence and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**III.**

The Sixth Circuit has recognized two discrete theories of recovery under the FMLA: (1) the "interference" theory arising under § 2615(a)(1), and (2) the "retaliation" theory arising from § 2615(a)(2). *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). Britko pleads only a retaliation claim under the FMLA. The central issue raised by the retaliation theory is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)).  In other words, an employer's intent is relevant only in retaliation claims because those claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Id.* (citing *Edgar*, 443 F.3d at 508) (emphasis original).

**A.**

To establish a *prima facie* retaliation claim, a plaintiff must establish that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was causal connection between the protected FMLA activity and the adverse employment action."[1]

*Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404). Defendant does not contest that Plaintiff engaged in protected FMLA activity; that it knew of that activity; and that Plaintiff suffered an adverse employment action. Defendant does challenge Britko's allegation that there was a causal connection between his protected activity and any adverse employment action he claims.

Defendant does assert that Britko cannot establish the final element of his prima facie case: that there was a causal connection between his FMLA leave and the adverse employment actions he was subject to. To satisfy this element, a plaintiff must present sufficient evidence to "raise [an] inference that her protected activity was the likely reason" for the adverse action. *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 387 (6th Cir. 2006) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990). However, "[t]he burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there [was] a causal connection between the retaliatory action and the protected activity." *Cutcher v. Kmart Corp.*, 364 F. App'x 183, 190 (6th Cir. 2010).

Britko argues that he can establish causation by means of both the temporal proximity between his protected activity and Defendant's adverse employment action and by means of the hostility expressed toward him by his superior. Although temporal proximity alone is generally insufficient to establish circumstantial evidence of a causal connection, the Sixth Circuit has clarified that, in some circumstances, temporal proximity alone can suffice to show a causal

---

[1] The Sixth Circuit "applies the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims under the FMLA." *Edgar v. JAC Products, Inc.* 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001) and *Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 933 (E.D. Mich. 2005)) (internal citations omitted).

connection in a retaliation case: "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) (analyzing temporal proximity under the ADEA and Elliot-Larsen Civil Rights Act).[2]

With respect to claims for FMLA retaliation, the Sixth Circuit has held that a span of less than three months is sufficient to create an inference of a causal connection. *See Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two."); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that a three-month time lapse between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work established a causal connection at the prima facie stage). Here, Britko claims that his termination was close enough to the time when he took leave to satisfy the causation prong of his prima facie case. He is correct. Britko took his leave from August 11 to August 13, 2014. Defendant terminated his employment on October 9, 2014. This is a span of less than two months and sufficient to satisfy the causation prong of Britko's prima facie case.

Defendant suggests that causation may only be determined by reference to the time period between when an employer learns of protected activity and when the adverse employment action is taken. Here, Defendant learned of Britko's protected activity more than a month before he took the leave. But this argument is foreclosed because the Sixth Circuit has concluded that the period of time between an employee's leave and his termination may be used for determining

---

[2] The Sixth Circuit relies on other employment discrimination law to fill the gaps in FMLA case law. *See, e.g.*, *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 (6th Cir. 2008) (relying on ADA, ADEA, and Title VII cases); *Bryson*, 498 F.3d at 561 (same).

if the causation prong of a prima facie case is met. *See Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011). Britko has established a prima facie case of FMLA retaliation.[3]

**B.**

Under the *McDonnell-Douglas* burden-shifting framework, "[o]nce the prima facie case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996); *Philbrick v. Holder*, 583 F. App'x 478, 482 (6th Cir. 2014). Defendant offers as a legitimate non-discriminatory reason for Britko's termination that he simply could not perform the duties of the job at a satisfactory level. It cites to his periodic performance reviews during the probationary period that indicate his performance was subpar. Further, it notes that his own testimony concedes that he was not performing his job at the pace required for full time employees.

When a Defendant proffers a legitimate nondiscriminatory reason for an adverse employment action, "the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination." *Philbrick*, 583 F. App'x at 482. "A plaintiff may show pretext by demonstrating: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action].'" *Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013) (quoting *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir. 2004)) (emendation in original). A plaintiff does not need to "'introduce additional, independent evidence of discrimination' to survive summary

---

[3] Britko's additional claim of causation need not be addressed because the temporal proximity between his leave and his termination is sufficient to meet the causation prong of his prima facie case.

judgment." *Id*. at 492 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, (2000)).

Britko offers "several arguments" that the explanation proffered by Defendant is mere pretext. Pl.'s Resp. Br. 23, ECF No. 14. Britko's arguments can be broken five different claims of pretext. First, he claims that he was treated differently by Ms. Paladi and his coworkers after he returned from leave. Second, he argues that Defendant evaluated his performance using subjective criteria. Third, he asserts that Defendant's reason for termination was pretextual because it did not provide him a proper FMLA notice in accordance with the FMLA regulations. Fourth, he argues that Ms. Paladi forced him to reschedule his ablation procedure despite his doctor urging it be scheduled as early as possible and that she forced him to return early from the procedure. Fifth, he claims that Ms. Paladi did not respond to his explanation that he would work more slowly due to the medication he was taking.

**1.**

Britko's first claim of pretext is that his coworkers' perception of him in the office changed after his leave. Specifically, he alleges that he was treated differently after taking leave than he was before he took leave. *See Lamer v. Metaldyne Co. LLC*, 240 F. App'x 22, 32 (6th Cir. 2007) ("[W]here an employer treats an employee differently after she asserts her rights . . . than before she had done so, a retaliatory motive may be inferred."). Britko's primary support for this claim is his performance reviews from before he took leave and after he took leave. He claims that after he took leave "Ms. Paladi began attacking Plaintiff stating that his difficulties mainly surround 'speed and multitasking.'" Pl.'s Resp. Br. 23, ECF No. 14.

But this summation of the reviews is misleading. Indeed, Britko's first review noted that he was performing unsatisfactorily in "[m]eet[ing] established standards for amount of work

performed." 45-day Review, Ex. C, Def.'s Mot. Summ. J., ECF No. 11-4. That same concern was present following Britko's 90-day performance review. *Id*. at Ex. F, ECF No. 11-7.

The only difference between the two reviews is the specificity of Britko's unsatisfactory performance in the 90-day review. In the 90-day review, Ms. Paladi writes that Britko's precertification of the ultrasound clinic "should be consistantly [sic] 4-5 days ahead if not more." *Id*. She also notes that Britko "is having difficulty" handling the "add-on line" in addition to the ultrasound clinic and that the "add-on line" is "a permanent part of the duties of the position." *Id*. In the prior review, Ms. Paladi told Britko, less specifically, that he "needs to move forward" and that he needs more training on the precertification software. Id. at Ex. C.

It is hard to read any inconsistency between these two reviews. In both, Ms. Paladi identifies Britko's performance as unsatisfactory and in need of improvement, particularly in the area of speed. The law of pretext demands more. In *Lamer*, 240 F. App'x at 32, the Sixth Circuit held that the plaintiff had demonstrated pretext because the employer did not follow its own discipline policies in terminating the plaintiff and also allowed policy violations by the plaintiff to go unpunished before his protected conduct but punished those same violations after.

Here, there was no inconsistency in treatment. If anything, Ms. Paladi gave greater clarity to shortcomings Britko was already aware he had. This is far short of the "attack" Britko claims it to be.

**2.**

Next, Britko alleges that Defendant evaluated him with subjective criteria. Britko relies on *Rowe v. Cleveland Pneumatic Co., Numerical Control* for the proposition that subjective employment criteria must be treated with a heavy dose of scrutiny. 690 F.2d 88, 93 (6th Cir. 1982) ("While we recognize that, in some circumstances, employment decisions may be made on

the basis of such subjective criteria, any procedure employing such subjective evaluations will be carefully scrutinized in order to prevent abuse."). *Rowe* is not particularly applicable, however, because it addresses only the use of subjective criteria in a case alleging racially discriminatory hiring practices. Additionally, *Rowe* does not state that the use of subjective criteria are per se objectionable, just that they may provide insight into discriminatory intent.

Britko also cites to *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000), which explains that certain subjective criteria "can not [sic] be evaluated objectively and therefore should not be relied upon to overcome a prima facie case of discrimination." The type of subjective criteria the court in *Goosby* identified were "requirements such as 'initiative and judgment capabilities' and the ability 'to relate to people in a manner to win confidence and establish support.'" *Id*. The court cautioned that reliance on such factors is "too subjective to allow for any meaningful" assessment of the plaintiff. *Id*. (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998)).

Some of the criteria Britko identifies are subjective, but not all. Although Britko argues that "Ms. Paladi did not and has not given any explanation as to how Plaintiff had difficulty with speed or multitasking," that claim is belied by the record. Ms. Paladi explained in the 90-day performance review and in her deposition that Britko was not sufficiently advanced in his precertifications for the ultrasound clinic. She also explained that Britko was handling less than one clinic and that most precertification registrars were handling three or more clinics. Further, she noted that the standard for how many "days out" a procedure must be precertified is a national one that Defendant has adopted. There is nothing subjective about that requirement. Britko himself corroborates this fact when he concedes that he was aware of the "days out"

- 12 -

requirement and that he was still short of that requirement on his only full clinic (ultrasounds).

Britko Dep. 27, 56, 82, Def.'s Mot. Summ. J., ECF No. 11-18.[4]

**3.**

Third, Britko alleges that Defendant's legitimate non-discriminatory reason for

termination was pretext for unlawful discrimination because Defendant did not provide him with

legally-required FMLA notices. Britko argues that this is "other acts" evidence supportive of a

finding of pretext. Britko relies on *Griffin v. Finkbeiner* which held:

> In the employment-discrimination-law context, "other acts" evidence consists of
> testimony or other evidence of discrimination by the employer against non-party
> employees. The Supreme Court has instructed lower courts not to apply a per se
> rule excluding "other acts" testimony from non-parties alleging discrimination by
> supervisors who did not play a role in the challenged decision. *Sprint/United
> Mgmt. Co. v. Mendelsohn ("Sprint"),* 552 U.S. 379, 380–81, 387, 128 S.Ct. 1140,
> 170 L.Ed.2d 1 (2008). Whether such evidence is relevant is a case-by-case
> determination that "depends on many factors, including how closely related the
> evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388, 128
> S.Ct. 1140.

689 F.3d 584, 598 (6th Cir. 2012). Britko then relies on this Court's decision in *Scorsone v. Wal-*

*Mart Stores, Inc.*, No. 13-CV-14418, 2014 WL 2207002, at *3 (E.D. Mich. May 28, 2014), for

the proposition that a failure to supply FMLA eligibility notices supports a finding of pretext.

But *Scorsone* did not go so far. *Scorsone* held that the failure to supply proper FMLA notices

could support the causation prong of a plaintiff's prima facie case. The *Scorsone* decision was

also issued in a much different procedural posture from this case, on a motion to dismiss.

---

[4]    Britko claims that he actually met these standards because he was "five days out" on his ultrasound clinic at
the time he was terminated and was handling the ultrasound clinic and the "add on" line (or call-in line). He claims
that Ms. Paladi's testimony that there were six precertification registrars and that each would handle four to five
clinics was false. Accordingly, he argues that he was handling two clinics and was fully up to speed when he was
terminated. This is incorrect. Britko was handling one clinic, ultrasounds, and part of the "add on" line. While he
was up to speed on ultrasounds, he was still performing below standard. Even assuming Ms. Paladi's explanation of
precertification registrar duties is incorrect, the math still reveals that the registrars would be handling three clinics
each and one precertification registrar would handle two clinics. And assuming further that Britko was the
precertification registrar responsible for only two clinics, he could not meet that standard. He concedes that he was
supposed to handle the entire "add on" line but that he was still splitting those duties with other precertification
registrars at the time of his termination.

It is true that evidence of causation may support a finding of pretext. Yet, the procedural posture of the *Scorsone* decision is important as the defendant's challenge was to the plaintiff's pleading and not, as here, the plaintiff's ability to furnish sufficient evidence that defendant's explanation for its decisions are merely pretext for FMLA discrimination. Evidence of a failure to furnish an FMLA notice—an interference claim—does not, without more, demonstrate a jury submissible question of pretext for FMLA retaliation.

**4.**

Fourth, Britko claims that his termination was pretext for discrimination because Ms. Paladi forced him to reschedule his ablation procedure. Under 29 C.F.R. § 825.302(e), an employer may consult with an employee to schedule a planned medical treatment at a time that does not "disrupt unduly the employer's operations, subject to the approval of the health care provider." There is no evidence in the record that Britko's procedure was unplanned or that the timing agreed upon between Ms. Paladi and Britko was not approved by Britko's physician. Britko was aware of the need for the procedure on July 2, 2014 and was given a date for the procedure of August 1, 2014 by his doctor. Britko then relayed that date to Ms. Paladi and she requested that Britko ask if the procedure can take place during a different week. Britko requested another date and his doctor's scheduler provided him with an August 11, 2014 procedure date. That was the date when Britko underwent the procedure.

Nothing about this exchange violates the FMLA regulations and, accordingly, nothing about it shows discriminatory intent. Ms. Paladi, within the rights of an employer under the FMLA, requested that Britko seek another week for his procedure. Britko asked his doctor for another procedure date and his doctor obliged.[5]

---

[5]     There is at least some dispute about the date that Britko was originally given for the procedure. Britko claims in his response to Defendant's motion that his doctor wanted to schedule the ablation procedure for July 7,

Britko expands on this argument and claims that Ms. Paladi also forced him to return early from his ablation procedure, against the advice of his doctor. This claim has no support in the record. Britko testified in his deposition that he alone made the decision to return on Thursday, August 14, 2014 rather than the following Monday. He testified that he informed Ms. Paladi of his early return by voicemail but never actually had a discussion with her. He also explained that his return on Thursday, August 14, 2014 was approved by his physician. Thus, Britko's claim is essentially that he felt some sort of unspoken pressure to return to work earlier than his doctor advised. No explicit evidence supports Britko's impression and his claim that he was forced to return early relies on the insinuation that Ms. Paladi should have taken the initiative to persuade him to stay off work two more days. The argument is without merit.

**5.**

Finally, Britko alleges that his termination was pretext for FMLA discrimination because he told Ms. Paladi that he would perform his work more slowly because of his medication. Despite being told this, Ms. Paladi criticized Britko for speed issues during his 90-day performance review. Britko does not explain why Ms. Paladi's alleged intolerance of his medicine's impact on his productivity serves as evidence that the proffered explanation for his termination is merely pretext. That is, Britko has not explained how the fact that Ms. Paladi was

---

2014. This claim is supported only by Britko's answers to Defendant's first request for admissions and second interrogatories. In response to Defendant's second request for admission Britko, through his counsel, wrote "Plaintiff's physician wanted Plaintiff to undergo the procedure on Monday, July 7, 2014 and, as such, Plaintiff underwent testing on June 27, 2014. His doctor called Plaintiff on July 2, 2014, indicating a desire to have the procedure done on July 7, 2014." Pl.'s Ans. to Def.'s Req. for Adm., Ex. D, Def.'s Mot. Summ. J., ECF No. 11-5. Plaintiff's answers were issued on March 2, 2016. Plaintiff's deposition was taken on January 27, 2016. During the deposition Britko stated that the first date he was provided by his doctor was a date in early August. When asked to clarify he stated that August 1, 2014 was the first date that his doctor's office provided for the procedure.

Britko cannot attempt to create a genuine issue of material fact with his own deposition through the inclusion of unsubstantiated discovery responses. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). For the discrepant date furnished in Britko's discovery responses to be admissible, he would need to also furnish an explanation for the conflict that the responses created. He has not done so. The July 7, 2014 date will be disregarded.

not allegedly sensitive to his speed issues because of his new medication provides any insight

into Ms. Paladi's thought process about Britko's protected leave.

Because Britko is unable to prove pretext, his FMLA claim will be dismissed.

**IV.**

Having concluded that Britko's federal claim is to be dismissed, his claim under state law

for violation of the Michigan Persons with Disabilities Civil Rights Act must now be addressed.

The Court has supplemental jurisdiction over these state law claims because they form

part of the same controversy as Britko's federal claim. *See* 28 U.S.C. § 1367(a). However, this

Court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the
district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original
jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining
jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the

question of whether to retain jurisdiction over the state law claims rests within the Court's

discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of

the claim over which the federal court had original jurisdiction creates a presumption in favor of

dismissing without prejudice any state-law claims that accompanied it to federal court. *Id*. at 863.

In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and

to promote justice between the parties, by procuring for them a surer-footed reading of

applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The issues

presented are more appropriate for resolution by a state court. Therefore, the Court declines to

exercise its supplemental jurisdiction. Britko's supplemental state law claim will be dismissed without prejudice.[6]

**V.**

Accordingly, it is **ORDERED** that the hearing scheduled for June 24, 2016 is **CANCELLED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that Defendant Bay Regional Medical Center's Motion for Summary Judgment, ECF No. 11, is **GRANTED in part**.

It is further **ORDERED** that Count I of Plaintiff Michael Britko's Complaint, ECF No. 1, is **DISMISSED with prejudice**.

It is further **ORDERED** that Count II of Plaintiff Michael Britko's Complaint, ECF No. 1, is **DISMISSED without prejudice**.

Dated: June 10, 2016                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 10, 2016.

                                        s/KIM GRIMES
                                        Kim Grimes Acting in the Absence of
                                        Michael A. Sian, Case Manager

---

[6]  Similarly, Defendant's claim that Britko did not mitigate his damages will also not be addressed.